# EXHIBIT A

ER

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss                                          SUPERIOR COURT DEPARTMENT
                                                     CIVIL ACTION NO.

_____
                                          )
SABRINA BELLEMSIEH                        )
                                          )
        Plaintiff,                        )
                                          )
v.                                        )        REQUEST FOR HEARING
                                          )
DELTA AIRLINES, INC.                      )
                                          )
        Defendant.                        )
_____

## COMPLAINT AND DEMAND FOR JURY TRIAL
## I.     INTRODUCTION

1.    The Plaintiff, Sabrina Bellemsieh, (hereinafter "Ms. Bellemsieh" or the "Plaintiff"),

hereby respectfully submits her Complaint, together with attached **Exhibits**, in support of her

claims, *inter alia*, for gender discrimination, in violation of M.G.L. c. 151B §4, and for related

claims upon contract, employment and certain torts, against Delta Airlines, Inc., (hereinafter

"Delta" or the "Defendant"). The Plaintiff's allegations, as set forth herein, are asserted for

damages arising from, and resulting from the Defendant's violations of the following:

    a)    sexual harassment and hostile work environment, in violation of M.G.L. c.
          151B §§ 1, 3A;

    b)    unlawful discrimination (gender) and hostile work environment, in
          violation of M.G.L. c. 151B § 1, 4(1);

    c)    breach of contract;

    d)    breach of implied covenant of good faith and fair dealing;

    e)    violation of the Massachusetts Wage Act, M.G.L. c. 149, § 148;

    f)    wrongful termination/constructive termination;

    g)    intentional infliction of emotional distress;

1

h)      negligent infliction of emotional distress; and/or

i)      civil conspiracy.

2.      The Plaintiff alleges that, as a result of and as caused by the Defendant's breaches, actions, omissions, practices, and/or course of conduct, the Plaintiff has suffered lost wages benefits, bonuses, compensation, and prospective business relationships, together with her reputational harm, injuries, damages, and emotional distress, with physical manifestation thereon, and further requests general, special and consequential damages, multiple and/or punitive damages, costs, interest and her attorney's fees, as may be awarded.

## II.      PARTIES

4.      The Plaintiff, Sabrina Bellemsieh, is a woman, residing Revere, Suffolk County, Massachusetts. During the relevant time period herein, the Plaintiff was employed by the Defendant, Delta Airlines, which employment was wrongfully terminated, on a discriminatory basis, by the Defendant.

5.      Upon information and belief, the Defendant, Delta Airlines, Inc., is a Delaware corporation, with its principal place of business located at 1030 Delta Blvd., Atlanta, GA 30354.

## III.      JURISDICTION AND VENUE

6.      Pursuant to M.G.L. c. 223 § 8, the Plaintiff contends that this action is appropriately brought in Suffolk County, which is the county in which the harassment, wrongful termination and other violative acts have occurred and where the facts and circumstances of this action arose and is where, inter alia, the Defendants' intentional, wanton, and fraudulent actions, omissions, and/or courses of conduct occurred. The Plaintiff states that this controversy is in excess of $50,000.00 and that the Superior Court has plenary jurisdiction over this action.

## IV.      FACTUAL BACKGROUND

7.      The Plaintiff alleges that the following facts, without limitation, give rise to her claims for relief:

8.      Ms. Bellemsieh began her employment with Delta on or around July 6, 2022, as a Cargo Control Center Agent in Delta's Cargo Department at Boston Logan Airport.

9.      Shortly after Ms. Bellemsieh began her employment with Delta, Paul Oliveria (hereinafter "Mr. Oliveria") began harassing her through inappropriate comments and physical advances. Mr. Oliveria was a Manager of Cargo Operations at Boston Logan Airport and Ms. Bellemsieh's superior.

10.     On or around August to September 2022, Mr. Oliveria began inviting Ms. Bellemsieh to social events outside of work, despite her refusals. He also called her personal phone multiple times outside of work hours to pressure her to spend time with him.

11.     From about August 2022 through July 2023, Mr. Oliveria frequently called Ms. Bellemsieh into his office while she was on the clock, where he would close the door and engage in inappropriate physical contact under the guise of giving her golf tips.

12.     Mr. Oliveria often implied to Ms. Bellemsieh that spending time with him would give her inside knowledge and career advancement opportunities at Delta.

13.     On or around July 2023, Mr. Oliveria invited Ms. Bellemsieh and a coworker, Christina Denson, to his cabin in Maine for a weekend trip. During a golf outing, he stood close to Ms. Bellemsieh while showing her how to putt, and touched her nipple.

14.     Ms. Bellemsieh was further subjected to inappropriate text messages from Zachary Dewart (hereinafter "Mr. Dewart"), Cargo Lead and another one of Ms. Bellemsieh's supervisors at Delta.

15.     On or around April 2024, Mr. Dewart told fellow co-workers that he planned to report another co-worker to HR for lying about why she had taken off work. When others found out and were dismayed by his plan, Mr. Dewart spread the rumor that it was actually Ms. Bellemsieh who had screenshotted the co-worker's Facebook photo containing her whereabouts and planned to report it to HR. This was despite Ms. Bellemsieh not being present in the office that day and having no involvement in the situation.

16.     In furtherance of his lie, Mr. Dewart sent Ms. Bellemsieh a text that read "Don't put my name in false rumors when you don't know the truth. See you Thursday."

17.     On April 22, 2024, Ms. Bellemsieh reported the incident with Mr. Dewart to her superiors. A true copy of Ms. Bellemsieh's email report to Michael Phillips, Raphael Tyson, and Robert Santilli is attached, restated and incorporated by reference hereto as **Exhibit A.**

18.     Upon information and belief, Ms. Bellemsieh's superiors did not take action in response to her report of Mr. Dewart.

19.     On or about two weeks following the report, Ms. Bellemsieh was suddenly put on notice that she was subjected to a "Final Corrective Action Notice" and suspended from work.

20.     On several occasions, Ms. Bellemsieh was notified by Defendant that she had received "Formal Verbal Coaching" regarding her purported "unsatisfactory" employment performance from superiors at Delta, however, she had not received such coaching.

21.     On at least one occasion, Ms. Bellemsieh supposedly received "Formal Verbal Coaching" on a day she did not even work.

22.     During a period of Ms. Bellemsieh's employment at Delta, female employees were restricted to only one working toilet while males had access to multiple restrooms.

23.     During her employment at Delta, Ms. Bellemsieh's schedule was frequently changed, against company policy, due to her "low seniority."

24.     Ms. Bellemsieh submitted multiple complaints to Delta's Human Resources (HR) Department in an attempt to address harassment and workplace inequities, but received no response.

25.     Despite all of the issues she experienced at Delta, Ms. Bellemsieh consistently showed up on time and performed her job duties.

26.     On or around June 7, 2024, Ms. Bellemsieh was terminated from her position at Delta.

27.     Ms. Bellemsieh received her termination letter on June 17, 2024. A true copy of Sabrina Bellemsieh's termination letter is attached hereto as **Exhibit B.**

28.     When she was terminated, Ms. Bellemsieh was not paid for paid time off ("PTO") she had earned per company policy.

29.     As a result of Ms. Bellemsieh's termination, her flight privileges were revoked, and she has faced significant financial hardship.

30.     On or around June 19, 2024, Ms. Bellemsieh appealed her termination. A true copy of the email confirming Ms. Bellemsieh's appeal is attached hereto as **Exhibit C.**

31.     Ms. Bellemsieh's appeals call was on or around July 8, 2024. A true copy of the email conforming Sabrina Bellemsieh's appeal call is attached hereto as **Exhibit D.**

32.     Over four months later, Ms. Bellemsieh's appeal of her termination was granted. However, she chose not to return to Delta in light of its behaviors above. A true copy of the Appeal Response Letter is attached hereto as **Exhibit E.**

33.     Being out of work since June 2024, Ms. Bellemsieh has faced significant financial strain. She initially started receiving unemployment benefits, but was unable to complete the further steps necessary to receive additional benefits due to her mental health.

34.     While she was still employed at Delta, Ms. Bellemsieh experienced depression, anxiety, and PTSD due to harassment and job-related stress. As a result, she was approved for intermittent leave, as confirmed by the Department of Family and Medical Leave (DFML). The approval, granted on February 7, 2024, provided her with the right to take leave for an illness or injury.

35.     Since her termination from Delta, Ms. Bellemsieh has experienced worsening mental health, which has required medication and therapy to cope. Additionally, she suffers from ongoing migraines, hair loss and thinning, severe headaches, and stress-related skin rashes and irritation.

36.     Ms. Bellemsieh is actively engaged in the search for a comparable job, but has been unable to find a good fit for her in terms of comparable wage, location, and hours.

37.     On or about February 12, 2025, the Plaintiff, by and through counsel, served a demand letter pursuant to her claims below. A true copy of the February 12, 2025 Demand Letter from Plaintiff's counsel is attached, restated, and incorporated hereto as **Exhibit F.**

38.     Despite the service of a proper demand letter by the Plaintiff, the Defendant has failed to respond.

39.     The Plaintiff timely filed her Complaint with the Massachusetts Commission Against Discrimination ("MCAD") on April 25, 2025 and obtained a Letter of Dismissal withdrawing her Complaint under 804 CMR 1.04(12)(2020) "…for the purpose of removing it to

court pursuant to M.G.L. c. 151B, § 9…" on August 12, 2025. A true copy of the August 12, 2025 Dismissal Letter from MCAD is attached, restated, and incorporated hereto as **Exhibit G.**

40.     In sum, as a result of Defendant's discriminatory and unlawful acts, the Plaintiff has suffered mental, emotional and financial injuries, in excess of $50,000.00, and together with costs, attorneys' fees and interest. Furthermore, the Plaintiff respectfully requests that she be awarded general, compensatory and/or special damages and losses, costs, interest, multiple and/or punitive damages, reasonable attorneys' fees, and any such other relief as this Honorable Commission deems just and appropriate.

## V.     <u>VIOLATIONS OF LAW</u>

## <u>COUNT I – VIOLATION OF M.G.L. c. 151B §§ 1, 3A</u>

41.     The Plaintiff restates and reasserts Paragraphs 1 through 40 of the Complaint, and the <u>Exhibits</u> attached hereto, and incorporates them herein by reference.

42.     At all relevant times herein, the Defendant was Ms. Bellemsieh's employer, as defined by M.G.L. c. 151B § 1, within the Commonwealth of Massachusetts.

43.     Employees can bring claims against their employer under M.G.L. c. 151B for a hostile work environment.

44.     The conduct of the Defendant as described herein, constitutes sexual harassment, under M.G.L. c. 151B § 3A, including but not limited to claims that the Defendant:

    a)     maintained employees who sexually harassed and physically touched Ms. Bellemsieh on multiple occasions;

    b)     facilitated an environment in which Ms. Bellemsieh was dissuaded from reporting incidents of sexual harassment from male superiors;

    c)     violated the requirements, terms, and conditions of existing Massachusetts statutes, rules, and regulations meant for the protection of employees' welfare.

7

45.    As a direct and proximate cause of the Defendant's violations of M.G.L. c. 151B §§ 1, 3A, the Plaintiff suffered irreparable harm to her detriment, lost wages, benefits, compensation, together with reputational harm, injuries, and damages, in excess of $50,000.00, and together with costs, attorneys' fees and interest. Furthermore, the Plaintiff respectfully requests that she be awarded general, compensatory and/or special damages and losses, costs, interest, multiple and/or punitive damages, reasonable attorneys' fees, and any such other relief as this Honorable Court deems just and appropriate.

## **COUNT II – VIOLATION OF M.G.L. c. 151B § 4(1)**

46.    The Plaintiff restates and reasserts Paragraphs 1 through 45 of the Complaint, and the Exhibits attached hereto, and incorporates them herein by reference.

47.    Employees can bring claims against their employer under M.G.L. c. 151B for a hostile work environment.

48.    The conduct of Defendant as described herein constitutes gender discrimination under M.G.L. c. 151B § 4, including but not limited to claims that the Defendant:

a)    suspended Ms. Bellemsieh following her attempts to report her superior, Mr. Dewart, to HR for his alleged harassment, threatening, and intimidation;

b)    terminated Ms. Bellemsieh shortly after her suspension following her attempts to report her superior, Mr. Dewart, for his above actions;

c)    falsified reports of verbal coaching and other unsubstantiated claims of tardiness and absence against Ms. Bellemsieh in retaliation for her attempting to report Mr. Dewart for his above actions;

d)    failed to provide female employees with more than one working restroom;

e)    violated the requirements, terms, and conditions of existing Massachusetts statutes, rules, and regulations meant for the protection of the employees' welfare.

49.    As a direct and proximate cause of the Defendant's violations of M.G.L. c. 151B §§ 1, 4(1), the Plaintiff suffered irreparable harm to her detriment, lost wages, benefits,

compensation, together with reputational harm, injuries, and damages, in excess of $50,000.00, and together with costs, attorneys' fees and interest. Furthermore, the Plaintiff respectfully requests that she be awarded general, compensatory and/or special damages and losses, costs, interest, multiple and/or punitive damages, reasonable attorneys' fees, and any such other relief as this Honorable Court deems just and appropriate.

## COUNT III – BREACH OF CONTRACT

50.      The Plaintiff restates and reasserts Paragraphs 1 through 49 of the Complaint, and the Exhibits attached hereto, and incorporates them herein by reference.

51.      The Plaintiff and Defendant entered into a valid and binding agreement under the employment agreement, together with oral and written statements.

52.      In detrimental reliance upon the agreement of the parties, Ms. Bellemsieh forewent other possible employment opportunities to work at Delta.

53.      The Plaintiff, Ms. Bellemsieh performed her obligations under the contract and in good faith.

54.      Defendant Delta, by its conduct described herein, breached its contract with the Plaintiff.

55.      As a direct and proximate cause of the Defendant's breach of contract, the Plaintiff suffered irreparable harm to her detriment, lost wages, benefits, compensation, together with reputational harm, injuries, and damages, in excess of $50,000.00, and together with costs, attorneys' fees and interest. Furthermore, the Plaintiff respectfully requests that she be awarded general, compensatory and/or special damages and losses, costs, interest, multiple and/or punitive damages, reasonable attorneys' fees, and any such other relief as this Honorable Court deems just and appropriate.

## COUNT IV – BREACH OF IMPLIED
## COVENANT OF GOOD FAITH AND FAIR DEALING

56.     The Plaintiff restates and reasserts Paragraphs 1 through 55 of the Complaint, and the <u>Exhibits</u> attached hereto, and incorporates them herein by reference.

57.     A covenant of good faith and fair dealing was implied and existed in the agreement and in the business relationship between the parties.

58.     The Defendant had a duty of good faith and fair dealing in its dealings with the Plaintiff and pursuant to the promises, contract, and statements made to Plaintiff to induce her to enter into an employment agreement with them.

59.     By Defendant's illegal conduct, the Plaintiff has suffered damages and losses, and will continue to suffer damages and harm, as a direct and indirect consequence of her agreement with the Defendant.

60.     Under the covenant, Delta was obligated to have good faith performance of its obligations under the agreement with the Plaintiff, and to be faithful and consistent to the justified expectations of the Plaintiff.

61.     Delta was unjustly enriched when Ms. Bellemsieh, to her knowledge, was not compensated for the paid time off she earned while employed at Delta following her termination.

62.     As described above, Delta breached the implied covenant of good faith and fair dealing with the Plaintiff.

63.     As a direct and proximate cause of the Defendant's breach of the implied covenant of good faith and fair dealing, the Plaintiff suffered irreparable harm to her detriment, lost wages, benefits, compensation, together with reputational harm, injuries, and damages, in excess of $50,000.00, and together with costs, attorneys' fees and interest. Furthermore, the Plaintiff respectfully requests that she be awarded general, compensatory and/or special damages and

losses, costs, interest, multiple and/or punitive damages, reasonable attorneys' fees, and any such other relief as this Honorable Court deems just and appropriate.

## COUNT V – VIOLATIONS OF THE
## MASSACHUSETTS WAGE ACT, M.G.L. c. 149, § 148

64.    The Plaintiff restates and reasserts Paragraphs 1 through 63 of the Complaint, and the Exhibits attached hereto, and incorporates them herein by reference.

65.    At all relevant times, Defendant was Ms. Bellemsieh's employer under the meaning of the Massachusetts Wage Act, M.G.L. c. 149, § 148.

66.    Under the Massachusetts Wage Act, employers have a duty to pay employees their earned wages, including holiday or vacation payments due under an oral or written agreement.

67.    As described above, Delta has violated the Massachusetts Wage Act by failing to pay Ms. Bellemsieh her earned PTO per their employment agreement.

68.    As a direct and proximate cause of the Defendant's violation of the Massachusetts Wage Act, M.G.L. c. 149, § 148, the Plaintiff suffered irreparable harm to her detriment, lost wages, benefits, compensation, together with reputational harm, injuries, and damages, in excess of $50,000.00, and together with costs, attorneys' fees and interest. Furthermore, the Plaintiff respectfully requests that she be awarded general, compensatory and/or special damages and losses, costs, interest, multiple and/or punitive damages, reasonable attorneys' fees, and any such other relief as this Honorable Court deems just and appropriate.

## COUNT VI – WRONGFUL
## TERMINATION/CONSTRUCTIVE TERMINATION

69.    The Plaintiff restates and reasserts Paragraphs 1 through 68 of the Complaint, and the Exhibits attached hereto, and incorporates them herein by reference.

70.     As described above, Defendant wrongfully terminated Ms. Bellemsieh after she reported harassment from a superior.

71.     As described above, Defendant's actions toward Ms. Bellemsieh were so difficult and unpleasant that, even though her termination was eventually rescinded, she was constructively terminated.

72.     As a direct and proximate cause of the Defendant's wrongful and constructive termination of the Plaintiff, the Plaintiff suffered irreparable harm to her detriment, lost wages, benefits, compensation, together with reputational harm, injuries, and damages, in excess of $50,000.00, and together with costs, attorneys' fees and interest. Furthermore, the Plaintiff respectfully requests that she be awarded general, compensatory and/or special damages and losses, costs, interest, multiple and/or punitive damages, reasonable attorneys' fees, and any such other relief as this Honorable Court deems just and appropriate.

## **COUNT VII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

73.     The Plaintiff restates and reasserts Paragraphs 1 through 72 of the Complaint, and the Exhibits attached hereto, and incorporates them herein by reference.

74.     The conduct of Defendant, as described herein, constitutes intentional infliction of emotional distress, including but not limited to claims that the Defendant:

a)     maintained a workplace environment where Ms. Bellemsieh was sexually harassed by her superiors;

b)     maintained a workplace environment with pervasive gender discrimination;

c)     targeted Plaintiff with unsupported and unsubstantiated claims of tardiness, absence, and/or other alleged problems with her work performance,   including falsifying reports of unsatisfactory work performance and verbal coaching;

d)    changed Ms. Bellemsieh's schedule repeatedly despite her complaints to HR; and

e)    through these actions, created and worsened Plaintiff's symptoms including depression, anxiety, PTSD, migraines, hair loss and thinning, severe headaches, and stress-related rashes and irritation.

75.    As a direct and proximate cause of the Defendant's intentional infliction of emotional distress toward the Plaintiff, the Plaintiff suffered irreparable harm to her detriment, lost wages, benefits, compensation, together with reputational harm, injuries, and damages, in excess of $50,000.00, and together with costs, attorneys' fees and interest. Furthermore, the Plaintiff respectfully requests that she be awarded general, compensatory and/or special damages and losses, costs, interest, multiple and/or punitive damages, reasonable attorneys' fees, and any such other relief as this Honorable Court deems just and appropriate.

## COUNT VIII – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

76.    The Plaintiff restates and reasserts Paragraphs 1 through 75 of the Complaint, and the Exhibits attached hereto, and incorporates them herein by reference.

77.    For the reasons described herein, the conduct of Defendant constitutes negligent infliction of emotional distress.

78.    As a direct and proximate cause of the Defendant's negligent infliction of emotional distress toward the Plaintiff, the Plaintiff suffered irreparable harm to her detriment, lost wages, benefits, compensation, together with reputational harm, injuries, and damages, in excess of $50,000.00, and together with costs, attorneys' fees and interest. Furthermore, the Plaintiff respectfully requests that she be awarded general, compensatory and/or special damages and losses, costs, interest, multiple and/or punitive damages, reasonable attorneys' fees, and any such other relief as this Honorable Court deems just and appropriate.

## COUNT IX – CIVIL CONSPIRACY

13

79.    The Plaintiff restates and reasserts Paragraphs 1 through 78 of the Complaint, and the Exhibits attached hereto, and incorporates them herein by reference.

80.    Defendants knew that its discrimination and retaliation on the basis of gender constituted a tort.

81.    Defendants, by their agents and/or employees, assisted, encouraged, and conspired to terminate the Plaintiff for her reports of her superiors and other issues at Delta.

82.    For the reasons above, the conduct of the Defendant constitutes civil conspiracy.

83.    As a direct and proximate cause of the Defendant's civil conspiracy, the Plaintiff suffered irreparable harm to her detriment, lost wages, benefits, compensation, together with reputational harm, injuries, and damages, in excess of $50,000.00, and together with costs, attorneys' fees and interest. Furthermore, the Plaintiff respectfully requests that she be awarded general, compensatory and/or special damages and losses, costs, interest, multiple and/or punitive damages, reasonable attorneys' fees, and any such other relief as this Honorable Court deems just and appropriate.

## VI.    REQUESTS FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that this Honorable Commission grant her the following relief:

A)    determine that the Defendant is liable, and for all damages, losses and costs, as alleged herein;

B)    determine and award the Plaintiff the actual losses sustained by her as a result of the Defendant's violations of law, as set forth herein;

C)    render an award on behalf of the Plaintiff, on all Counts of the Complaint, and issue findings of fact and ruling of law, as necessary and appropriate, that the Defendant is liable in all respects;

D)    order, decide, adjudge, and determine the Defendant's liability is for all losses, injuries and damages, special and consequential, general, punitive and/or otherwise, and for all interest and costs as alleged herein;

E)    award the Plaintiff her costs, including but not limited to filing fees, costs, expenses and interest, for being required to bring this action;

F)    award the Plaintiff her actual attorneys' fees, for being required to bring this action;

G)    award the Plaintiff multiple, double, treble and/or punitive damages in an amount to be determined;

H)    order declaratory relief finding that the employment agreement and policies are enforceable and have been materially breached by the Defendant;

I)    order equitable relief reinstating the Plaintiff's flight benefits; and/or

J)    such further and additional relief as this Honorable Commission deems just and proper.

Respectfully Submitted,
PLAINTIFF, Sabrina Bellemsieh,

By her Attorneys,

*/s/ Philip M. Giordano*
Philip M. Giordano, Esq.
Julian A. Frare, Esq.
Taylor M. Gould, Esq.
Giordano & Company, P.C.
REED & GIORDANO, P.A.
One McKinley Square, Sixth Floor
Boston, Massachusetts 02109
Telephone: (617) 723-7755
Facsimile: (617) 723-7756
Email: pgiordano@reedgiordano.com
Email: jfrare@reedgiordano.com
Dated: September 25, 2025          Email: tgould@reedgiordano.com

# EXHIBIT A



**From: Bellemsieh, Sabrina** <sabrina.bellemsieh@delta.com>
Date: Fri, Apr 26, 2024 at 10:26 AM
Subject: Fw: Concern
To: Sabrina Bellemsieh <sbellemsieh@gmail.com>

Sabrina Bellemsieh

Delta Air Lines - **BOS**

*Cargo Control Center*



**From:** Bellemsieh, Sabrina <sabrina.bellemsieh@delta.com>
**Sent:** Friday, April 26, 2024 10:25 AM
**To:** Tyson, Raphael O <raphael.tyson@delta.com>; Phillips, Michael K <Michael.K.Phillips@delta.com>; Santilli, Robert P <robert.santilli@delta.com>
**Subject:** Re: Concern

Mike and Robert,

Thank you for your prompt response and your interest in further understanding my concerns regarding the recent communication from Zack.

When I mentioned perceiving Zack's message as a potential threat, it stemmed from several factors within the context of our professional relationship.

Firstly, Zack and I maintain a strictly professional relationship, devoid of any personal

friendship or casual communication, including texting. Therefore, receiving a message from him outside of our usual channels immediately raised my apprehension.

Secondly, Zack holds a leadership position where he supervises me, which inherently adds a power dynamic to our interactions. This dynamic can amplify the impact of any communication, especially if it contains ambiguous or potentially confrontational language.

Additionally, Zack's familial connections within the company, specifically having a father and brother who work here, contribute to the intimidation factor. This familial association can create a sense of added pressure or concern regarding potential consequences or implications of interactions with Zack.

Furthermore, the phrase "See you Thursday" can be perceived similarly to a veiled threat, akin to the implication of "meet you in the parking lot." While on the surface, it may seem innocuous, within the given context and considering the factors mentioned above, it carries undertones that evoke a sense of unease and apprehension about the nature of our upcoming interaction. To clarify he never said "meet you in the parking lot" it is just an example.

Lastly, considering the gender dynamics at play, with Zack being male and myself female, societal norms and perceptions can exacerbate feelings of intimidation or discomfort, particularly in situations where assertiveness or confrontation is involved.

Taken together, these elements combined to create a perception of the phrase "See you Thursday" as more than a simple statement of scheduling. Instead, given the aforementioned factors, it evoked a sense of unease and apprehension about the nature of our upcoming interaction.

I hope this provides clarification regarding my perspective on the matter. Please let me know if you require any further information or clarification.

Thank you for your attention to this matter.

**Sabrina Bellemsieh**
Delta Air Lines - **BOS**
*Cargo Control Center*



**From:** Bellemsieh, Sabrina
**Sent:** Monday, April 22, 2024 11:17 AM
**To:** Tyson, Raphael O <raphael.tyson@delta.com>; Phillips, Michael K <Michael.K.Phillips@delta.com>
**Subject:** Concern

I hope this email finds you well. I am writing to bring to your attention a concerning communication I received from Zack earlier today.

In the message, Zack stated, "Don't put my name in false rumors when you don't know the truth. See you Thursday." I must express my discomfort and concern regarding the tone and implications of this message. I interpreted it as a potential threat, which has left me feeling uneasy and apprehensive about our upcoming interaction.

As an employee dedicated to upholding the integrity and professionalism of our workplace, I want to assure you that I have always acted in accordance with company policies and values. However, I am deeply troubled by the insinuation made by Zack in their communication. I firmly believe that open and respectful communication is essential in our professional environment, and I am committed to resolving any misunderstandings or concerns that may arise.

I would like to emphasize that I have been off work for the past two days and have not had any communication or interaction that would warrant such a message. Furthermore, I am unsure of the specific incident or rumor to which Zack is referring, as I have not been involved in any such activity.

Given the nature of the message and its impact on my well-being, I kindly request your assistance in addressing this matter. I believe it is important for all parties involved to have a clear understanding of the situation and to ensure that appropriate measures are taken to maintain a safe and respectful workplace environment.

Thank you for your attention to this matter. I am available to discuss further if needed.

**Sabrina Bellemsieh**
Delta Air Lines - **BOS**
*Cargo Control Center*

# EXHIBIT B



**Paul Oliveira**
Mgr. Boston Cargo

**Delta Air Lines, Inc.**
152 Harborside Dr.
Bldg. # 56
E. Boston, MA. 02128
Mobile: 1+ 617-671-5538
Email: Paul.Oliveira@delta.com

DATE:   Jun 17, 2024

Sabrina Bellemsieh
PPR: 046316300

As we have discussed, the decision has been made to terminate your employment. Your options are provided below with the associated deadlines.

You may resign in lieu of termination. Should you choose to resign, you must advise me of that decision within 24 hours of receipt of this letter. Your effective date of resignation would be retroactive to the date of this letter. If you do not inform me of your decision within 24 hours, your termination will be retroactive to the date of this letter.

If you have not already done so, please return to me all Delta property, company identification, access cards, airport access badges, keys, credit cards, parking permits, computer equipment, cell phone, etc.

Delta Health insurance information (COBRA) will be mailed to your address on file. As a reminder, Employee Assistance Program can be reached 24/7 at 800-533-6939.

Based on the reasons that led to your termination of employment, you will be eligible for future employment with Delta and its subsidiaries after 7 years from the date of your termination.

Aligned with our Culture, you may have the option to appeal the decision to terminate your employment. To be eligible to file an EO appeal, you must be employed with Delta for at least 180 days. EO appeals must be filed within 180 days from the date of separation from Delta. To request an EO appeal, complete the EO Appeal Intake Form (use link). Alternately, written appeal requests may be submitted to appeals.eo@delta.com; include a statement on why you wish to appeal your termination with new and critical facts to be considered, your employee number, email address, mailing address, and telephone number.  Your EO appeal will be reviewed, and a written response will be sent to you. Questions about the EO appeal process may be directed to your HR Manager or to appeals.eo@delta.com.

Feel free to contact me directly at 617-671-5538 if you have any questions.

Sincerely,


Paul Oliveira
Mgr. Boston Cargo

CC:     Employee File
        Sam Giannelli, HR Manager

# EXHIBIT C

**From:**    EO, Appeals
**To:**      Sabrina Bellemsieh
**Subject:** Automatic reply: [EXTERNAL] Sabrina Bellemsieh 046316300
**Date:**    Wednesday, June 19, 2024 2:39:12 PM

* * * * * * * * * * * *THIS IS AN AUTO-GENERATED EMAIL* * * * * * * * * * * *

Thank you for contacting the Equal Opportunity Department at Delta Air Lines, Inc. **This is an automatically generated reply**. This mailbox is for informational purposes only and **will not** respond to any inquiries.

The purpose of the EO Appeal Form is for Termination or Rehire Status Appeals **only.** If you are seeking a Termination or Rehire Status Appeal, please follow the attached link for more information. EO Appeal Form.

Once you have completed and submitted your EO Appeal Form, you will be contacted within ten (10) business days to begin the appeal process.

Once you've been contacted by your assigned EO Manager (EOM) to begin your appeal review, please communicate with your EOM directly regarding all questions relating to your appeal. Any questions or documents sent to this email box will not be received or reviewed by your EOM.

All other inquiries submitted via the EO Appeals Mailbox will not be responded to.

Please contact your Human Resources Business Partner for further guidance for all other matters.

# EXHIBIT D

| | |
|---|---|
| **From:** | EO, Appeals |
| **To:** | Sabrina Bellemsieh |
| **Subject:** | Appeal Call Confirmation |
| **Date:** | Wednesday, June 26, 2024 6:13:59 PM |

Thank you for your response. Your appeal call is confirmed for the date and time below. If you need to reschedule, please notify us by email at your earliest convenience.

Equal Opportunity Appeals Coordinator
Delta Air Lines

**From:** Sabrina Bellemsieh <sbellemsieh@gmail.com>
**Sent:** Wednesday, June 26, 2024 4:16 PM
**To:** EO, Appeals <Appeals.EO@delta.com>
**Subject:** [EXTERNAL] Re: Appeal Call Invite

**This Message Is From an External Sender**

This message was sent from outside of Delta. DO NOT click links, open attachments, or interact with this email unless you recognize and trust the sender. If unsure, click Report Suspicious to notify Delta's Cyber Monitoring & Incident Response Team!

Report Suspicious

Hello,
Thank you for your email. I am available at that time and you can reach me at 6175486988
Thank you,
Sabrina Bellemsieh

On Wed, Jun 26, 2024 at 16:14 EO, Appeals <Appeals.EO@delta.com> wrote:

> Dear Sabrina,
>
> Thank you for contacting the Equal Opportunity Department. We have received your request for a review of your termination. Your appeal call has been scheduled for Monday, July 8, 2024, at 10:30 am EDT with Equal Opportunity Manager, Annelyse Sanders. The EO Manager will speak with you by telephone, explain the appeal process, and answer any questions you

may have.  **<u>Please reply as soon as possible with your availability for the call and a telephone number where you can be reached</u>**. Appeal calls typically take no more than 30 minutes but can go longer depending on the situation.

Equal Opportunity Appeals Coordinator

Delta Air Lines

# EXHIBIT E



**Annelyse Sanders**
EO Manager, HR – Equal
Opportunity and Compliance

**Delta Air Lines, Inc.**
Department 955
P.O. Box 20706
Atlanta, GA 30320-2530
T. +1 404-715-1163
F. +1 404-677-3901
Annelyse.Sanders@delta.com

November 22, 2024

Sabrina Bellemsieh
**VIA EMAIL ONLY -** Sbellemsieh@gmail.com

Dear Sabrina,

A review has been conducted of the information you submitted and the circumstances surrounding the termination of your employment. As you know, you began your employment with Delta on July 6, 2022, and ended on June 7, 2024, when you were involuntarily terminated from Delta.

In termination appeals, we consider the specific facts and circumstances which resulted in your termination, the information you submitted on appeal, including the information you shared during our phone conversation on July 8, 2024, and your recent employment record. We also considered any new information provided during the appeal process which was not known at the time of the decision to terminate employment.

As a result, a determination that your request for reinstatement is approved. Your Department Leader will be in contact to discuss the details of your return to work.

This letter is the final step in the appeal process; therefore, we consider this matter closed. We wish you the best in your future endeavors.

Sincerely,

Annelyse Sanders

cc: Leah Gajria, General Manager – Equal Opportunity & Compliance

# EXHIBIT F

# REED & GIORDANO

Attorneys at Law
A Professional Association
One McKinley Square, 6th Floor
Boston, Massachusetts 02109-2724
Telephone: (617) 723-7755
Facsimile: (617) 723-7756
Email: pgiordano@reedgiordano.com

Philip M. Giordano*
Barry C. Reed, Jr.
_____
Derek A. Glover
Julian A. Frare
Taylor M. Gould
* also admitted in New York

**PERSONAL & CONFIDENTIAL**
**BY FEDERAL EXPRESS**

February 12, 2025

Delta Air Lines, Inc.
1030 Delta Boulevard
Atlanta, GA 30354-1989
Attn: General Counsel

Re:     *Sabrina Bellemsieh – Notice of Demand for Relief*

Dear Sir or Madam:

Please accept this correspondence as a written demand for relief pursuant to the Massachusetts Fair Employment Practice Act (M.G.L. c. 151B). The prospective plaintiff in this matter is Sabrina Bellemsieh (hereinafter the "Plaintiff" or "Ms. Bellemsieh"). Ms. Bellemsieh's allegations, as described below, are asserted as to the unfair or improper acts or practices by and through Delta Airlines, Inc., as the prospective Defendant (hereinafter referred to as "Delta," "you," "your," or the "Defendant") in a litigation within the Commonwealth of Massachusetts. Please be informed that this Firm represents the Plaintiff in this matter.

This letter concerns your activities relating to the Plaintiff's employment and termination. The Plaintiff asserts and claims that you have employed unfair and deceptive practices and acts in violation of Massachusetts law. These violative acts and omissions also give rise to numerous state common law claims, including but not limited to: a) gender discrimination; b) retaliation; c) wrongful termination based on gender discrimination; d) wrongful termination based on retaliation; e) breach of contract, and f) breach of the implied covenant of good faith and fair dealing, among others.

As set forth below, please accept this correspondence as the Plaintiff's demand for injuries and damages and for relief by way of: (a) a formal apology from Delta Airlines for ignoring her complaints and mishandling her case; (b) reinstatement of her flight benefits, and; (c) demand for injuries and damages for relief in the amount of $950,000.00, <u>plus</u> reasonable attorney's fees and costs.

1

## FACTS AND BACKGROUND

The Plaintiff alleges that the following facts, without limitation, give rise to her claims for relief:

Ms. Bellemsieh is a woman residing in Massachusetts. The Plaintiff began her employment with Delta on or around July 6, 2022, as a Cargo Control Center Agent in Delta Airlines' Cargo Department at Boston Logan Airport. Her role included demanding responsibilities, including, but not limited to, overseeing and coordinating the movement of cargo within the airport, managing shipment details, tracking cargo status, coordinating with ground crews for loading and unloading, resolving any issues with cargo documentation or delivery, and ensuring efficient flow of goods while adhering to safety regulations and compliance standards; essentially acting as the central hub for all cargo operations within the facility.

### A. Harassment and Misconduct by Delta Employees Paul Oliveria and Zachary Dewart

During her time employed with the Defendant, she experienced a variety of hardships, including the following, without limitation: ongoing sexual harassment from superiors, frequent last-minute schedule changes against company policy due to her "low seniority," unequal treatment regarding attendance policies, and unfair and overly demanding workload as a "relief line" employee.

Shortly after she began her employment with Delta, Paul Oliveria (hereinafter "Paul") began harassing her through persistent advances and inappropriate comments, and continuously threatening her job security.

At all relevant times, Paul was Manager of Cargo Operations at Boston Logan Airport, and Ms. Bellemsieh's superior. On or around August to September 2022, he began inviting her to social events outside of work, despite her refusals. He called her personal phone multiple times outside of work hours to pressure her to spend time with him. On or around August 2022 through July 2023, Paul frequently called her into his office while she was on the clock, closed the door, and engaged in inappropriate physical contact under the guise of giving her golf tips. He would place his hands on her to demonstrate golf form and regularly offer her financial advice, such as how to open an account with the Delta credit union. Using his position of power, Paul often implied that spending time with him would give her inside knowledge and career advancement opportunities at Delta, making her feel trapped and obligated to endure his behavior to secure her future.

On or around July 2023, Paul invited Ms. Bellemsieh and a coworker, Christina Denson, to his cabin in Maine for a weekend trip. During a golf outing, he stood close to her while showing her how to putt and suddenly grabbed her nipple. She was shocked and humiliated, but quietly moved on to the next hole without addressing the incident for fear of retaliation. Paul continued to frequently hug Ms. Bellemsieh at work and consistently maintained a touchy-feely demeanor, making her increasingly uncomfortable. His behavior crossed professional boundaries and created a hostile and stressful work environment.

Ms. Bellemsieh was further subjected to inappropriate text messages from Zachary Dewart (hereinafter "Zach"), who was Cargo Lead and another one of Ms. Bellemsieh's supervisors at Delta, adding to the toxic work environment she already faced. In or around April of 2024, one of Ms. Bellemsieh's coworkers had failed to find coverage for a shift while traveling abroad and missed work, resulting in the coworker receiving a "no-call, no-show." Despite this, the coworker faced no consequences. The coworker later posted a Facebook photo of herself at a family event, holding a glass of champagne and appearing well-dressed. On the day this photo began circulating in the office, Zach was present and participated in a discussion with other employees about it. He took a screenshot of the photo and told a few of his fellow coworkers that he was going to send it to HR. After word of Zach's intentions got out, many coworkers expressed dismay that Zach would "rat" out a fellow coworker. Attempting to deny that he would do such a thing, Zach asserted that Ms. Bellemsieh had spread the rumor that he had taken the screenshot of the coworker's Facebook photo and planned to report it to HR, even though Ms. Bellemsieh was not present in the office that day and was not involved in the rumor. In furtherance of his lie, Zach then sent Ms. Bellemsieh a text message that read: "Don't put my name in false rumors when you don't know the truth. See you Thursday." This message felt intimidating and threatening to Ms. Bellemsieh, especially given that Ms. Bellemsieh and Zach's working relationship was already strained and distant due to Zach's multiple incidents of past aggressive behavior.

This was an unnecessary escalation and added to her discomfort and anxiety at work. Realizing she could not take the threats and harassment any longer, on or around April 22, 2024, Ms. Bellemsieh reported the incident to her superiors. A true copy of Sabrina Bellemsieh's email report to Michael Phillips, Raphael Tyson, and Robert Santilli is attached, restated and incorporated by reference hereto as **Exhibit A**. However, nothing was done by the Defendant to alleviate these circumstances. This resulted in a tumultuous, toxic, and unwelcoming environment. Ms. Bellemsieh was forced to work in cautious discomfort, afraid that anything would set off Zach and trigger more threatening actions.

Around two weeks later and following her reports, she was suddenly put on a notice that she was subjected to a "Final Corrective Action Notice" and suspended from work. It became clear to Ms. Bellemsieh that she was targeted for "Final Corrective Action Notice" in retaliation for making a report about her male superior regarding his harassment, threats, and intimidation, among other things, in violation of the law.

These experiences caused significant emotional distress, including anxiety, depression, and a deep sense of humiliation and isolation. She felt unsafe at work and powerless to address the harassment and retaliation she endured.

### B.    Additional Hardships Suffered by the Plaintiff while Employed at Delta

In addition to the harassment and sexual misconduct she experienced at the hands of Delta employees, Ms. Bellemsieh was also the subject of repeated targeting by the Defendant, by way of its employees and/or agents, in retaliation and based upon unsupported and unsubstantiated claims of tardiness, absence, and/or other alleged problems with the performance of her job duties. On several occasions, Ms. Bellemsieh was notified by Defendant that she had received "Formal Verbal Coaching" regarding her purported "unsatisfactory" employment performance from her

superiors at Delta when, in fact, she had not. On at least one occasion, she supposedly received "Formal Verbal Coaching" on a day she did not even work. Despite her proactive communication regarding her absences and struggles, management failed to engage with her effectively, leading to confusion and further distress. Additionally, Ms. Bellemsieh and other women working for Delta experienced gender discrimination and mistreatment based on their gender. For example, for a substantial period of time, female employees were restricted to only one working toilet while males had access to multiple restrooms.

Ms. Bellemsieh was the victim of constant workplace hostility. Her schedule was frequently changed unfairly and against company policy due to her "low seniority." Ms. Bellemsieh submitted multiple complaints to Defendant's Human Resources (HR) Department in an attempt to solve these and other issues pervasive at Delta. Ms. Bellemsieh repeatedly reached out to HR to address harassment and workplace inequities, but received no response. Despite her proactivity, communication, and compliance, these issues remained unresolved. These experiences led to feelings of abandonment, worsened mental health, and exacerbated workplace stress.

### C.     Delta's Wrongful Termination of Ms. Bellemsieh

Despite the issues discussed above, Ms. Bellemsieh consistently showed up on time and performed her job duties above and beyond in her role. On or around June 7, 2024, Ms. Bellemsieh was unfairly terminated from her position at Delta. She received her termination letter on June 17, 2024. A true copy of Sabrina Bellemsieh's termination letter is attached hereto as **Exhibit B**. On or around June 19, 2024, Ms. Bellemsieh appealed her termination. A true copy of the email confirming Sabrina Bellemsieh's appeal is attached hereto as **Exhibit C**. Her appeals call was on or around July 8, 2024. A true copy of the email conforming Sabrina Bellemsieh's appeal call is attached hereto as **Exhibit D**. Over four months later, Ms. Bellemsieh's appeal of her termination was granted. A true copy of the Appeal Response Letter is attached hereto as **Exhibit E**. The fact that her termination was rescinded highlights not only the impropriety of her termination, but the unprofessional, illegal, and derelict acts perpetrated by Delta towards Ms. Bellemsieh that led up to this point. Upon information and belief, Ms. Bellemsieh has not been paid for paid time off ("PTO") she had earned when she was terminated.

### D.     Ms. Bellemsieh Suffers Serious Mental, Financial, and Physical Harm

The aforementioned incidents and hardships faced by the Plaintiff at work for the Defendant have had a lasting negative impact. Ms. Bellemsieh has been unable to fully move forward in life due to the inappropriate actions by Delta. Moreover, the four-month-long appeal process of her termination has only added to the immense stress and uncertainty she has faced in her time working for the Defendant.

She has communicated with her mental health provider, Dr. Brooke Hammel, regarding the distress she faced at work. In her correspondence, she expressed feelings of being targeted by her managers, which contributed to her psychological emergencies. Dr. Hammel advised her to seek immediate help due to the overwhelming stress caused by her work environment. This situation reflects a severe lack of support and understanding from Delta management, further exacerbating Ms. Bellemsieh's mental health struggles.

As a result of the actions of the Defendant and its agents, Ms. Bellemsieh has and continues to battle persistent depression, anxiety, and PTSD due to harassment and job-related stress. These challenges have required therapy and medication to cope. Additionally, she suffers from ongoing migraines, hair loss and thinning, severe headaches, and stress-related skin rashes and irritation. These symptoms continue to worsen due to the prolonged legal and financial strain and stress that these incidents have had on her.

She was approved for intermittent leave due to her illness, as confirmed by the Department of Family and Medical Leave (DFML). The approval, granted on February 7, 2024, provided her with the right to take leave for an illness or injury, affirming her legitimate need for absences during her employment. The notice of intermittent time reported for her leave demonstrates that she followed the proper procedures for taking time off and that any leave she took was necessary due to ongoing health concerns.

As a result of her termination, her flight privileges were revoked, and she has faced significant financial hardship. The loss of flight privileges was emotionally and financially devastating, given their importance to Ms. Bellemsieh's well-being and connection to her family. Being out of work since May 2024, Ms. Bellemsieh has faced significant financial strain. She initially started receiving unemployment benefits, but was unable to complete the further steps necessary to receive additional benefits due to her mental health. This situation has also impeded her ability to focus on other career goals, like pursuing real estate. While Ms. Bellemsieh is actively engaged in the search for a comparable job, she has been unable to find a good fit for her in terms of comparable wage, location, and hours.

## **VIOLATIONS OF LAW**

**1)**    **Gender Discrimination and Hostile
Work Environment - Violation of M.G.L. c. 151B §§ 1, 4**

Ms. Bellemsieh contends that your conduct as described herein sets out a claim for wrongful termination on the basis of gender discrimination and hostile work environment. Furthermore, she contends you acted with the purpose of creating an adverse impact against her, by way of termination based on her gender, to her detriment.

The Massachusetts Fair Employment Practice Act (M.G.L. c. 151B) prohibits discrimination on the basis of gender. Chapter 151B specifically prohibits a broad range of discrimination in employment on the grounds of race, sex, sexual orientation, gender identity, national origin, disability, or religion. *See* M.G. L. c. 151B, § 4. As relevant here, employees can bring a claim against their employer under c. 151B for a hostile work environment. *See College-Town, Div. of Interco, Inc.* v. *Massachusetts Comm'n Against Discrimination*, 400 Mass. 156, 162, 508 N.E.2d 587 (1987) ("The discrimination prohibited by G. L. c. 151B, § 4 [1], encompasses a work environment pervaded by abuse and harassment"). Chapter 151B provides a comprehensive set of remedies that address discrimination, harassment, and retaliation. *Brookline v. Alston*, 487 Mass. 278, 294 (2021). A plaintiff's initial burden in a gender discrimination case must show four elements: "membership in a protected class, harm, discriminatory animus, and causation." *See*

*Bulwer v. Mount Auburn Hosp.*, 473 Mass. 672, 680 (2016); *Sullivan v. Liberty Mut. Ins. Co.*, 444 Mass. 34, 39 (2005); *Lipchitz v. Raytheon Co.*, 434 Mass. 493, 502 (2001).

The Defendant unlawfully discriminated against the Plaintiff based on gender, thereby creating a hostile work environment, in violation of M.G.L. c. 151B § 4. As set forth above, Ms. Bellemsieh's complaints and suggestions to improve the working conditions for her and others at Delta were largely ignored because Ms. Bellemsieh, despite being an otherwise qualified and celebrated employee, is a woman. Additionally, the Defendant failed to have more than one working women's restroom for months while males were afforded multiple bathrooms.

"A hostile work environment is one that is 'pervaded by harassment and abuse, with the resulting intimidation, humiliation, and stigmatization, [and that] poses formidable barriers to the full participation of an individual in the workplace.'" *Cuddyer v. Stop & Shop Supermarket Co.*, 434 Mass. 521, 532, 750 N.E.2d at 937 (2001) (quoting *College–Town Div. of Interco, Inc. v. Massachusetts Comm'n Against Discrimination*, 400 Mass. 156, 162, 508 N.E.2d 587 (1987)). For purposes of a hostile environment claim under chapter 151B, sexual harassment is defined in part as "verbal or physical conduct of a sexual nature ... [that] has the purpose or effect of unreasonably interfering with an individual's work performance by creating an intimidating, hostile, humiliating or sexually offensive work environment." Mass. Gen. Laws ch. 151B, § 1(18).

The Plaintiff was the victim of sexual harassment in the workplace, thereby creating a hostile work environment, in violation of M.G.L. c. 151B, § 1(18). As set forth above, Ms. Bellemsieh is a woman who suffered severe and pervasive sexual harassment and abuse because of her gender from her male superiors which interfered with her work performance and created an intimidating and hostile work environment. She was prevented and/or otherwise dissuaded from reporting such incidents due to her aggressors' gender, their seniority and leverage within the Defendant's company, and a workplace culture that discourages such reports due to repeated inaction and apathy as experienced firsthand by the Plaintiff. Ms. Bellemsieh suffered an adverse employment action by being improperly and illegally discharged from her employment at Delta. The subsequent internal appeal and reversal of Ms. Bellemsieh's termination decision by Delta demonstrates the impropriety of her termination and further supports her claim that she was wrongfully terminated in the first place. The Defendant's actions constitute discrimination, in violation of Massachusetts law, against Ms. Bellemsieh based on her gender, thus creating an intolerable hostile work environment.

**2)      Retaliation Based Upon Gender Discrimination
        and Hostile Work Environment – Violation of M.G.L. c. 151B § 4(4)**

Ms. Bellemsieh contends that your conduct as described herein sets out a claim for wrongful termination on the basis of retaliation. Furthermore, she contends you acted with the purpose of creating an adverse impact against her, by way of termination, based on her decision to uphold legal and ethical guidelines. Additionally, Ms. Bellemsieh was repeatedly targeted by the Defendant, by way of its employees and/or agents, in retaliation and based upon unsupported and unsubstantiated claims of tardiness, absence, and/or other alleged problems with the performance of her job duties.

6

Massachusetts recognizes that an at-will employee has a cause of action for wrongful termination if the termination violates a clearly established public policy. *King v. Driscoll*, 418 Mass. 576, 582, 638 N.E.2d 488 (1994). An employee must be able to point to some clearly defined and well-established public policy that is threatened by the employer's action. *Glaz v. Ralston Purina Co.*, 24 Mass. App. Ct. 386, 389-90 (1987). Courts have established that an employee must show the following to demonstrate a wrongful termination: (1) asserting a legally guaranteed right; (2) doing what the law requires; (3) refusing to do that which the law forbids; (4) reporting violations of criminal law; or (5) cooperating with a law enforcement agency. *See Wright v. Shriners Hosp. for Crippled Children*, 412 Mass. 469, 472 (1992); *see also Flesner v. Technical Communications Corp.*, 410 Mass. 805, 810-11 (1991); *Hobson v. McLean Hosp. Corp.*, 402 Mass. 413, 416-17 (1988); *DeRose v. Putnam Management Co.*, 398 Mass. 205, 209-11 (1986).

The Defendant retaliated and discriminated against Ms. Bellemsieh based on her gender in violation of the law. Ms. Bellemsieh attempted to report her superior, Zach Dewart, to HR for his alleged harassment, threatening, and intimidation, among others, in violation of the law. Around two weeks later and following her reports, she was subject to a "Final Corrective Action Notice" and suspended from work. Shortly thereafter, she was terminated. Additionally, Ms. Bellemsieh was the victim of false reports of verbal coaching and other unsubstantiated claims of tardiness or absence in retaliation for reports made by her to HR. Ms. Bellemsieh was retaliated against because of her gender for reporting her male superior(s), for violation(s) of the law, and for other reports regarding Delta employee's compliance with legal and ethical guidelines.

### 3)    Delta Breaches its Contract with Ms. Bellemsieh

Ms. Bellemsieh contends that your conduct as described herein sets out a claim for breach of contract. A breach of contract is failure without excuse to perform a duty which is due under the contract. *See Sterile Corp. v. Continental Casualty Co.*, 20 Mass. App. Ct. 215, 220 (1985). An employment agreement proscribes retaliatory conduct against any employee for any reason. Even though the Plaintiff was hired "at-will" and could leave or be discharged at any time, the Defendant cannot lawfully discharge her on a discriminatory, retaliatory or other unlawful basis.

Here, Ms. Bellemsieh can show that, as a matter of law, a contract existed between her and the Defendant by and through Ms. Bellemsieh's employment agreement under the Defendant's employee policies, together with oral and written statements. Ms. Bellemsieh performed her duties and obligations under the employment agreement and as an employee at Delta in good faith. As set forth above, the Defendant knew or should have known that discharging the Plaintiff was in violation of the employment agreement and both discriminatory and retaliatory in nature. Therefore, the Defendant's acts constitute a breach of contract to Ms. Bellemsieh's detriment.

### 4)    Defendant's Breach of Implied Covenant of Good Faith and Fair Dealing

Ms. Bellemsieh contends that your conduct described herein sets out a claim for breach of the implied covenant of good faith and fair dealing. "Every contract in Massachusetts is subject, to some extent, to an implied covenant of good faith and fair dealing." *Ayash v. Dana-Farber Cancer Inst.*, 443 Mass. 367, 385 (2005); *Curtis v. Herb Chambers I-95, Inc.*, 458 Mass. 674, 680-81 (2011) ("the covenant ensures that the parties act in good faith"). The covenant, as

7

applied to at-will employment contracts, allows for recovery of damages when the at-will employee's discharge deprives them of compensation earned but not yet received, usually regardless of the employer's motives. *King v. Driscoll (King II)*, 424 Mass. 1, 6-7 (1996) (discussing *Fortune v. Nat'l Cash Register Co.*, 373 Mass. 96 (1977), and its progeny).

"A claim for breach of an implied covenant of good faith and fair dealing may be asserted only when an employer terminates an employee in order to deprive her of a previously earned benefit." *Fortucci v. RBS Citizens, N.A.*, 784 F. Supp. 2d 85, 89 (D. Mass. 2011) (emphasis added); *see also McCone v. New Eng. Tel. & Tel. Co.*, 393 Mass. 231, 234 (1984). The compensation in question must be for "past services." *Gram v. Liberty Mut. Ins. Co. (Gram I)*, 384 Mass. 659, 672 (1981); *see Williams v. Office Depot, Inc.*, 27 Mass. L. Rptr. 263 (Sup. Ct. 2010) (a claim based on deprivation of benefits earned). To establish a breach of the covenant of good faith and fair dealing in the employment context, a theory first recognized in *Fortune v. Nat'l Cash Register Co.*, 373 Mass. 96 (1977), a plaintiff must demonstrate that: (1) she was an at-will employee; (2) the employer terminated her; (3) the termination was without good cause or in bad faith; and (4) as a consequence of the termination, the employer is unjustly enriched, through the retention of "any readily definable, financial windfall resulting from the denial of the discharged employee of compensation for past services." *See Gram v. Liberty Mut. Ins. Co.*, 391 Mass. 333, 335 (1984).

The Plaintiff alleges that you are liable for a breach of an implied covenant of good faith and fair dealing. Here, the Plaintiff can show that, as a matter of law, a contract existed, which the Defendant breached and failed to comply with the covenant of good faith and fair dealing. The Defendant was unjustly enriched when Ms. Bellemsieh, to her knowledge, was not compensated for the PTO she earned while employed at Delta following her termination.

### 5)    Delta's Violations of the Massachusetts Wage Act

Ms. Bellemsieh asserts that your conduct described herein sets out a claim for violation of the Massachusetts Payment of Wages Act (the Act). "Originally enacted in 1879, the purpose of the Wage Act is 'to protect employees and their right to wages.'" *Mui v. Massachusetts Port Auth.*, 478 Mass. 710, 711, 89 N.E.3d 460 (2018) (quoting *Electronic Data Sys. Corp. v. Attorney Gen.*, 454 Mass. 63, 70, 907 N.E.2d 635 (2009)). The Act provides that, "[e]very person having employees in his service shall pay weekly or bi-weekly each such employee the wages earned by him… The word 'wages' shall include any holiday or vacation payments due an employee under an oral or written agreement. M. G. L. c. 149, § 148. Here, Ms. Bellemsieh has not received the paid time off and/or vacation time she earned under her employment agreement. Delta is therefore liable to Ms. Bellemsieh under the Massachusetts Wage Act, which penalties include treble damages and attorney's fees.

### 6)    Wrongful Termination/ Constructive Termination of Ms. Bellemsieh

Ms. Bellemsieh contends that your conduct described herein sets out a claim for wrongful termination/ constructive termination. A "constructive discharge occurs when the employer's conduct effectively forces an employee to resign. Although the employee may say, 'I quit,' the employment relationship is actually severed involuntarily by the employer's acts, against the

employee's will. In a frequently cited decision, the United States Court of Appeals for the First Circuit has stated that in order for a constructive discharge to be found, "the trier of fact must be satisfied that the new working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Alicea Rosado* v. *Garcia Santiago,* 562 F.2d 114, 119 (1st Cir. 1977). The test is met if, based on an objective assessment of the conditions under which the employee has asserted he was expected to work, it could be found they were so difficult as to be intolerable. *See Turner* v. *Anheuser-Busch, Inc.,* 7 Cal.4th 1238, 1248 (1994).

The Defendant wrongfully and/or constructively terminated the Plaintiff from her employment. By engaging in the conduct described herein, the Defendant knowingly created a hostile work environment, and a continuous pattern of conduct, which became intolerable to the Plaintiff. Delta is therefore liable for wrongful / constructive termination.

### 7) Defendant Intentionally Inflicts Emotional Distress upon Plaintiff

Ms. Bellemsieh contends that your conduct described herein sets out a claim for intentional infliction of emotional distress. A plaintiff asserting a claim for intentional infliction of emotional distress under Massachusetts law must show that: 1) the actor intended to inflict emotional distress or that she knew or should have known that emotional distress was the likely result of her conduct; 2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency, and was utterly intolerable in a civilized community; 3) that the actions of the defendant caused the plaintiff's distress; and 4) that the emotional distress sustained by the plaintiff was so severe and of a nature the no reasonable person could be expected to endure it. *Agis v. Howard Johnson Co.,* 371 Mass. 140, 144-45 (1976). As described above, Ms. Bellemsieh not only suffered from gender discrimination, but she was consistently subject to sexual harassment and harassment generally from her superiors at work. She was the repeated victim of unsupported and unsubstantiated claims of tardiness, absence, and/or other alleged problems with the performance of her job duties, including false reports of unsatisfactory work performance and verbal coaching. She had her schedule changed repeatedly, and the reports she made to HR fell on the deaf ears of the Defendant. No reasonable person would expect to endure this extreme and outrageous conduct by another, let alone their employer.

Since the inception of the problems created by Delta, she has experienced the beginning and worsening of symptoms including but not limited to depression, anxiety, and PTSD requiring therapy and medication to cope. Additionally, she suffers from ongoing migraines, hair loss and thinning, severe headaches, and stress-related skin rashes and irritation. The Defendant is therefore liable for intentional infliction of emotional distress.

### 8) Delta Negligently Inflicts Emotional Distress upon Ms. Bellemsieh

Ms. Bellemsieh contends that your conduct described herein sets out a claim for negligent infliction of emotional distress. the following elements: (1) negligence; (2) emotional distress; (3) causation; and (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under similar circumstances. *See Payton v. Abbott Labs,* 386 Mass. 540, 557, 437 N.E.2d 171 (1982). "A successful negligent

infliction of emotional distress claim, in other words, must do more than allege 'mere upset, dismay, humiliation, grief and anger' . . . Rather, plaintiffs must corroborate their mental distress claims with enough objective evidence of harm to convince a judge that their claims present a sufficient likelihood of genuineness to go to trial." *Sullivan v. Boston Gas Co.,* 414 Mass. 129, 137, 605 N.E.2d 805 (1993) (quoting *Payton,* 386 Mass at 437). For many of the same reasons as described above, the Defendant is liable to Ms. Bellemsieh for negligent infliction of emotional distress.

**9)** <u>**Civil Conspiracy**</u>

Finally, Ms. Bellemsieh contends that your conduct described herein sets out a claim for civil conspiracy. A "claim for civil conspiracy … requires a showing that the defendants (1) knew that the conduct of [the alleged tortfeasor] constituted a [tort] and (2) substantially assisted in or encouraged that conduct." *Baker v. Wilmer Cutler Pickering Hale and Dorr LLP*, 91 Mass. App. Ct. 835, 847-848, 81 N.E.3d 782 (2017) (citing *Kurker v. Hill*, 44 Mass. App. Ct. 184, 189, 689 N.E.2d 833 (1998)). Here, the Defendants knew their discrimination and retaliation on the basis of gender constituted a tort. The Defendant, by and through their agents and/or employees, assisted, encouraged, and conspired to terminate the Plaintiff for her reports of her supervisors and other issues with Delta. The Defendant is therefore liable to Ms. Bellemsieh for civil conspiracy.

## CLAIMS FOR RELIEF

Based on these alleged violations of law, the Plaintiff contends that she has suffered injury and damages. As a direct consequence of your illegal acts and failure to assist the Plaintiff in mitigation of her damages, the Plaintiff has had to continuously endure the avoidable costs. Therefore, demand relief for her damages in the amount of $950,000.00.

The purpose of this letter is to make you aware of the position of Ms. Bellemsieh and to give you or your attorney an opportunity to meet before the commencement of a litigation proceeding and tender a written reasonable offer of settlement. Please be advised that the Plaintiff intends to institute judicial proceedings under the auspices of the Commonwealth of Massachusetts following the expiration of thirty (30) days from the delivery or receipt of this letter.

If you have any questions, please contact me at the above address. I look forward to your timely response to this correspondence.

Very truly yours,

_/s/ Philip M. Giordano_
Philip M. Giordano
Giordano & Company, P.C.

PMG/tmg
Attachment per above

cc: Sabrina Bellemsieh

# EXHIBIT G

THE COMMONWEALTH OF MASSACHUSETTS
COMMISSION AGAINST DISCRIMINATION
One Ashburton Place, Boston, MA 02108
Phone: (617) 994-6000 Fax: (617) 994-6024

# - DISMISSAL -

| To: | Sabrina Bellemsieh | **Case:** Sabrina Bellemsieh v. Delta Air Lines, Inc. |
|---|---|---|
| | REED & GIORDANO, P.A. | **MCAD Docket Number:** 25BEM01368 |
| | One McKinley Square,6th Floor | **EEOC/HUD Number:** 16C-2025-01668 |
| | Boston, MA 02109 | **Investigator:** Mary Crittenden |

Your complaint has been dismissed as follows:

[ ]    Pursuant to 804 CMR 1.08(1)(a) (2020), the Commission accords substantial weight to the findings or resolution of the complaint by another forum and has decided to close the investigation accordingly.

[x]    Pursuant to 804 CMR 1.08(1)(b) (2020), the complaint is dismissed after being withdrawn pursuant to 804 CMR 1.04(12) (2020). You are required to file a copy of a complaint filed in court after withdrawal from the Commission with the Commission's Office of the General Counsel pursuant to 804 CMR 1.04(13) (2020).

[ ]    Pursuant to 804 CMR 1.08(1)(d) (2020), the complaint is administratively dismissed due to:

> [ ] bankruptcy of a party
> [ ] death of a party
> [ ] inability to locate a party after providing the party 30 days in which to respond to a notice sent to the party's last known address
> [ ] adjudication by another forum
> [ ] unreasonable refusal by complainant to cooperate with processing the case
> [ ] failure to participate
> [ ] refusal to accept a reasonable settlement offer
> [ ] other:

[ ]    Pursuant to 804 CMR 1.08(1)(e) (2020), the parties have settled the case.

[ ]    Pursuant to 804 CMR 1.08(4)(a)(5) (2020), the Commission has entered an order reversing a probable cause determination.

**Please note that further administrative or judicial review of the dismissal of your complaint is unavailable.**

*Neldy Jean-Francois*

August 12, 2025
_____        _____
Neldy Jean-Francois                               Date
Investigating Commissioner

MCAD Docket Number 25BEM01368, Dismissal without Right to Appeal

THE COMMONWEALTH OF MASSACHUSETTS
COMMISSION AGAINST DISCRIMINATION
One Ashburton Place, Boston, MA 02108
Phone: (617) 994-6000 Fax: (617) 994-6024

Cc:
Delta Air Lines, Inc.
Ryan D. Langel, Attorney
1030 Delta Boulevard
Law Dept. -981
Atlanta, GA 30354

Julian A. Frare, Esq.
REED & GIORDANO, P.A.
One McKinley Square, 6th Floor
Boston, MA 02109-2724

Philip M. Giordano, Esq.
REED & GIORDANO, P.A.
One McKinley Square, 6th Floor
Boston, MA 02109-2724

Taylor M. Gould, Esq.
Giordano & Company, P.C.
One McKinley Square, 6th Floor
Boston, MA 02109-2724

MCAD Docket Number 25BEM01368, Dismissal without Right to Appeal